Dr. William D. Woolf Executive Director for Occupational Education Dr. Terrence Tollefson Director of Community Colleges State Board for Community Colleges and Occupational Education 1525 Sherman Street, 2d Floor Denver, Colorado 80203
Dear Drs. Woolf and Tollefson:
QUESTION PRESENTED AND CONCLUSION
You have asked whether the approval of the Colorado Commission on Higher Education (hereinafter CCHE) is necessary when an educational institution subject to State Board for Community Colleges and Occupational Education (hereinafter State Board) governance establishes a new degree or non-degree program in occupational education.
 Based upon an examination and analysis of the various statutes affecting each agency and a reading of the relevant case law, I have concluded that the approval of CCHE is required when the State Board establishes a new occupational education degree program but is not required when a non-degree program is established.
To the extent that contrary conclusions were reached in the letter of January 12, 1978, from Assistant Solicitor General Holland to Dr. Woolf, that letter is modified by this opinion.
ANALYSIS
CCHE was created by legislative enactment to effect the best utilization of available educational resources for post high school education in Colorado, C.R.S. 1973, 23-1-101 etseq. As such, its primary purposes include the following:
 (T)o avoid needless duplication of facilities and programs in institutions of higher education; to achieve simplicity of state administrative procedures pertaining to higher education; . . . to achieve an adequate level of higher education in the most economic manner; and to continue to recognize the constitutional and statutory responsibilities of duly constituted governing boards of institutions of higher education in Colorado. . . .
C.R.S. 1973, 23-1-101. (Emphasis added.)
From a reading of the above statutory language and an examination of C.R.S. 1973, 23-1-105 through 23-1-107, it is evident that CCHE's purpose is to facilitate efficient utilization of higher educational resources, eliminate unnecessary educational programs and engage in long range planning for future higher educational needs. It is equally apparent that the operational management and governance of State higher educational institutions is to continue to reside in the various constitutionally and statutorily created institutional governing boards. It is also clear that the legislature does not deem CCHE's review and approval function to be an infringement on those general powers of governance. Perhaps the best indication of this can be evidenced by a reading of C.R.S. 1973, 23-1-107. There, at paragraph (1)(a), the statute provides that CCHE shall:
 Review and approve, consistent with the institutional role and purpose, the proposal for any new program before its establishment in any institution and transmit its decision to the institution within ninety days after receipt of such proposal. No such institution shall establish a new program without first receiving the approval of the commission. The term "program" includes the establishment of any new curriculum which would lead to a new degree program or the establishment of a college, school, division, institute or department.
(Emphasis added.)
The CCHE Act was passed in 1965, effective June 2, 1965.See 1965 Sess. L. ch. 268. Contemporaneously, in another act effective May 17, 1965, the legislature defined "degree" in very broad terms as any writing indicating that a person has satisfactorily completed a prescribed course of study in a particular field of endeavor. See 1965 Sess. L. ch. 267. That definition now appears at C.R.S. 1973, 23-2-102(1) and has been interpreted to apply to degrees awarded upon completion of an occupational training program. Colo. Poly.College v. State Bd. of Community Colleges, 173 Colo. 39,476 P.2d 38 (1970).
Although the definition of "degree" in section 23-2-102(1) is not directly applicable to the CCHE Act, it is indicative of the legislative intent because it is a contemporaneous expression by the same legislature. See Sands, 1A SutherlandStatutory Construction § 27.02 and 2A Ibid § 48.04. See also Industrial Commission v. NorthwesternCo., 103 Colo. 550, 88 P.2d 560 (1939) (legislature has power to define terms used by it and when term has been broadly defined by legislature, it cannot be narrowly construed).
It has been argued that "degree" as defined above is not applicable to vocational education programs because of the language of a subsequent legislative enactment, C.R.S. 1973,23-60-202(1)(f), which was enacted in the 1967 legislative session.See 1967 Sess. L. ch. 242. There the State Board is given the authority to define the requirements of appropriate "degrees" and certificates and to authorize the award thereof subject only to the review function of the CCHE relating to "formal academic programs." It is maintained that vocational education is not a formal academic program.
Such an argument is not persuasive when the State Board devises Associate of Arts degree curricula for vocational education programs. The awarding of a degree is the conferring ofacademic rank so as to convey to the ordinary mind some collegiate, university or scholastic distinction.Commonwealth v. New England College of Chiropractic,221 Mass. 190, 108 N.E. 895 (1915). To the general public and to the recipient the award of an Associate of Arts degree in occupational education confers such scholastic distinction. Therefore, Associate of Arts degree programs are "formal academic programs" as described in C.R.S. 1973, 23-60-202(1)(f) and are within the purview of CCHE review.
In addition, the fact that C.R.S. 1973, 23-1-107(1)(a) mandates CCHE review of all new degree programs would seem to cure any ambiguity in interpreting the meaning of formal academic programs as set forth in 23-60-202(1)(f). It is a fundamental rule of statutory construction that when two acts of the general assembly may be construed so that an inconsistency will be avoided, such a reading must be given. People v. James,178 Colo. 401, 497 P.2d 1256 (1972). In the instant case no strained construction will result from interpreting formal academic programs as found in 23-60-202(1)(f) to be synonymous with degree programs as found in 23-1-107(1)(a) particularly in light of the broad definitions of "degree" found at C.R.S. 1973,23-2-102(1). On the other hand I think there is no question that the language in 23-1-105(1)(a) and 23-60-202(1)(f) limits CCHE review to degree programs and that no review or approval is required for programs which do not lead to degree status.
The designation of the State Board as the state board of vocational education in C.R.S. 1973, 23-60-303(2) does not change my opinion. By its terms, that designation is limited to administering grant programs under various federal vocational laws and acting as the state approving agency for veterans' benefits. In Colo. Poly. College v. State Bd. of CommunityColleges the court held that the designation in section23-60-303(2) is restricted to the powers expressly stated in that section. (Indeed, as a result of that decision, it was necessary to specifically amend the designation to permit the State Board to act as the state approving agency for veterans' benefits.See 1971 Sess. L. ch. 312.) Thus, one cannot infer from23-60-303(2) that the legislature has given the State Board any authority to override the specific grant of authority to CCHE in23-1-106(1)(a).
There is nothing in the federal law relating to vocational education which would compel a different result. 20 U.S.C. § 2304
states that, consistent with state law, the state shall designate an agency as "the sole State agency responsible for the administration or the supervision of the administration" of federal financial assistance to state vocational education.
The legislative history of the federal Education Amendments of 1976 shows that the Congress did not intend that the state agency designated under 20 U.S.C. § 2304 must be the only state agency with responsibility in the vocational education area. Senate Report No. 94-882 recognized that only a few states have a state board for vocational education which has what the report called "cradle-to-grave" responsibility and noted that in most states, several agencies are involved in vocational education.See 1976 U.S. Code Congressional and Administrative News, pp. 4772-4775. Accordingly, the Act requires participation in the formulation of the state plan for vocational education byall state agencies involved in vocational education.See 20 U.S.C. § 2307. The Senate Report specifically disavowed any intention to require the state to restructure its agencies, stating, "it is not the intention of the Committee to require any state to create any new agency to deal with a single level of education." 1976 U.S. Code Congressional and Administrative News, p. 4774.
SUMMARY
For these reasons, I conclude that CCHE must review and approve any program offering a degree in occupational education.
Very truly yours,
 J.D. MacFARLANE Attorney General
cc: Dr. Lee R. Kerschner State Board of Trustees Joseph N. deRaismes Daniel Muse Thomas V. Holland
EDUCATION, HIGHER STATE AGENCIES
C.R.S. 1973, 23-1-101 et seq. C.R.S. 1973, 23-2-102
C.R.S. 1973, 23-60-202
C.R.S. 1973, 23-60-303
HIGHER EDUCATION, DEPT. OF Administration EDUCATION, DEPT. OF
CCHE approval is required for occupational programs which offer a degree; such approval is not required for non-degree programs.