The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Robert Joseph STINSON a/k/a Robert J. Steinman, Defendant-Appellant.

No. 79CA1051.

Colorado Court of Appeals, Div. III.

May 7, 1981.

Rehearing Denied June 11, 1981.

Certiorari Denied Aug. 10, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Morgan Rumler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Robert C. Floyd, Denver, for defendant-appellant.

KIRSHBAUM, Judge.

Defendant, Robert Joseph Stinson, appeals his jury conviction of theft by deception and criminal impersonation. We affirm.

The record reveals that in 1976 Helen Kennedy, a 55-year old widow, met de-

fendant, who was then 39 years of age. In 1978 they agreed to be married in Las Vegas, Nevada on June 17. On June 16, at defendant's suggestion, Mrs. Kennedy withdrew $10,830.32 from a savings account in the form of a cashier's check made payable to her. On June 17, the couple traveled to Las Vegas, Nevada. Defendant obtained applications for a marriage certificate, which Mrs. Kennedy executed, and undertook all arrangements for the marriage ceremony. On the evening of June 17 a person introduced by defendant as a "Reverend Brown" appeared at Mrs. Kennedy's hotel room and purportedly performed a wedding ceremony. Defendant gave Mrs. Kennedy a wedding ring. The couple immediately returned to Denver, and defendant moved into a house which, he falsely indicated, he owned and which he explained would serve as a permanent residence later. Mrs. Kennedy resided in her own home.

On June 23, 1978, Mrs. Kennedy and defendant proceeded to a Denver bank, where she cashed the cashier's check. Defendant took the cash and placed it in a "commercial account." He returned and produced a bank book showing the amount as a deposit and purporting to be a joint account established at that bank. No such account was established.

Subsequently, Mrs. Kennedy, upon her written inquiry, was informed that no record of any marriage between her and defendant existed in the appropriate Nevada public offices. Mrs. Kennedy contacted an attorney who, upon her behalf, demanded that the defendant return her money, a real estate contract he had secured on her home, and several personal household items. Defendant replied that he and Mrs. Kennedy were married and that the attorney should mind his own business. Mrs. Kennedy notified police officers of the situation, and defendant was arrested.

At all times pertinent to this action, defendant admittedly was married to another woman. At trial, a 65-year old widow testified that in 1976 defendant arranged a "marriage ceremony" with her and received $35,000 in cash and personalty from her, but that she later discovered that no ceremony had occurred. She stated that the items she gave defendant were never returned.

Defendant argues that the court erroneously denied his motion for judgment of acquittal as to the offenses of criminal impersonation and theft by deception because the evidence does not establish the elements of such offenses. We disagree.

Section 18–5–113(1), C.R.S.1973 (1978 Repl.Vol. 8), defines criminal impersonation in part as follows:

"A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity he: (a) Marries, or pretends to marry, or to sustain the marriage relation toward another without the connivance of the latter . . . ."

The evidence in this case is ample to support the conviction pursuant to that statutory section. Defendant's reliance on *People v. Horkans*, 109 Colo. 177, 123 P.2d 824 (1942) is misplaced; that case involved a separate section of the criminal impersonation statute which is not pertinent here.

Section 18–4–401, C.R.S.1973 (1978 Repl. Vol. 8) states as follows:

"(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another . . . by threat or deception, and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;

. . . .

(2) Theft is: . . . (d) A class 3 felony if the value of the thing involved is ten thousand dollars or more."

The instructions fully informed the jury of the definition of deception and of the appropriate elements of the offense. The record contains ample evidence to support the jury's conclusion of guilt as to that offense; it will not be reversed on appeal. *People v. Jones*, 191 Colo. 110, 551 P.2d 706 (1976).

Defendant also contends that the trial court erred in failing to reduce the count alleging theft from a class 3 felony under § 18–4–401(2)(d), C.R.S.1973 (1978

Repl.Vol. 8), as charged to a class 5 felony under § 18–4–401(5), C.R.S.1973 (1978 Repl. Vol. 8). Defendant made no such request at trial, and his assertion that he should have been prosecuted under some other provision of the theft statute is without merit. The People are entitled to charge such offense as may be established by the facts, albeit a higher degree of classification than defendant would have preferred. *People v. James*, 178 Colo. 401, 497 P.2d 1256 (1972); *People v. Donahue*, 41 Colo.App. 70, 578 P.2d 671 (1978).

Defendant contends that the court erred in sustaining the prosecution's objection to defense counsel's inquiry as to whether Mrs. Kennedy had ever received psychiatric care. The court sustained the objection, finding the question irrelevant and beyond the scope of the direct examination. The record reveals no offer of proof by defendant as to whether any evidence of such psychiatric care was available for potential impeachment purposes. Defendant apparently contends that the evidence was relevant to demonstrate Mrs. Kennedy's propensities to prevaricate. The trial court's ruling was well within its discretion to preclude interrogation about matters of questionable relevance. *People v. Cushon*, 189 Colo. 230, 539 P.2d 1246 (1975); *Gallegos v. People*, 157 Colo. 484, 403 P.2d 864 (1965).

Defendant contends that the trial court erred in granting a motion *in limine* filed by the prosecution to prohibit defense counsel from eliciting evidence on cross-examination of Mrs. Kennedy that she had filed a civil suit to recover damages as a result of the events which formed the basis for the criminal prosecution. The trial court did not prohibit such inquiry.

At an *in camera* hearing on the motion *in limine*, the trial court indicated that it would take judicial notice of the pendency of the civil action, but further indicated that it would not permit counsel to ask Mrs. Kennedy whether she would waive her attorney-client privilege to permit her attorneys in the pending civil action to testify as to confidential matters revealed to them by her in the course of their representation of her. The trial court further offered to hold additional *in camera* hearings in the event the attorneys moved to quash their subpoenas to testify and, at such time, to consider further Mrs. Kennedy's position with regard to the attorney-client privilege. Defense counsel then responded, "Maybe after cross examination this problem will go away." Mrs. Kennedy was not questioned regarding any confidential information, her attorneys were not subpoenaed to testify, and defendant did not request that judicial notice of the pleadings be taken. The trial court's ruling was correct.

Defendant next argues that the trial court erred in prohibiting him from cross-examining Mrs. Kennedy concerning a previous misdemeanor conviction for driving while ability impaired by alcohol stemming from a May 1978 incident. Misdemeanor convictions are not available for impeachment purposes. Section 13–90–101, C.R.S.1973. Furthermore, defendant did elicit testimony concerning Mrs. Kennedy's drinking habits and the amount of alcohol she imbibed while in defendant's company.

Defendant finally challenges the trial court's ruling that he could not cross-examine Mrs. Kennedy concerning her preliminary hearing testimony during which she denied sustaining a conviction and paying a fine for a prior misdemeanor offense. Nothing in her direct examination had raised that particular conviction; hence, her statements at the preliminary hearing were collateral to any testimony given in court. The trial court's ruling was correct. *Beeman v. People*, 193 Colo. 337, 565 P.2d 1340 (1977); *see Mitsunaga v. People*, 54 Colo. 102, 129 P. 241 (1913).

Judge affirmed.

SMITH and TURSI, JJ., concur.